UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

SHAMIKA CHENEY,

      Plaintiff,

v.                             Case No.  2:09-CV-597-FtM-DNF

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____/

## OPINION AND ORDER[1]

Plaintiff filed an application for  a period of disability and disability insurance

benefits on October 19, 2005, alleging disability as of June 30, 2005 [Tr. 52].  On December

30, 2005, Plaintiff applied for Supplemental Security Income (SSI), alleging the same

disability date of June 30, 2005 [Tr. 58]. The claims were denied initially and upon

reconsideration [Tr. 33, 39].   On January 21, 2009,  a hearing was held before

Administrative Law Judge Jose G. Rolon-Rivera [Tr. 16].  On February 19, 2009,

Administrative Law Judge Rolon-Rivera issued his decision denying Plaintiff's applications.

[Tr. 9-16]  The Appeals Council denied the Plaintiff's Request for Review on July 10, 2009

[Tr. 2-5], making the ALJ's decision the final decision of the Commissioner.   For the

reasons set out herein, the decision is **AFFIRMED**.

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to

as "Tr." followed by the appropriate page number), and the parties have filed legal

memoranda.

_____

[1]    Both parties have consented to the exercise of jurisdiction by a magistrate
judge, and the case has been referred to the undersigned by an Order of
Reference dated December 16, 2009.  (Doc.# 17).

## I.   SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511.  Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On October 19, 2005,  Plaintiff filed her applications for Disability  Insurance Benefits and Supplemental Security Income alleging  disability beginning June 30, 2005. The Decision of  ALJ Rolon-Rivera, dated February 19, 2009, denied Plaintiff's claim for benefits [Tr. 9-16].  At Step 1, the ALJ found  Plaintiff has not engaged in substantial gainful activity since June 30, 2005, the alleged onset date (20 C.F.R. 404.1520(b) and 404.1571) and that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2010[2]. [Tr. 11].  At Step 2,  the ALJ found that Plaintiff has had  the following severe combination of  physical impairments, as per the Regulations: diabetes

---

[2] The ALJ's decision contained two different dates establishing when the claimant was last insured for disability purposes. Page 9 of the transcript shows claimant was last insured through December 31, 2010, however, in the ALJ's "findings" he reported the date-last-insured was December 31, 2006 [Tr. 11]. The correct date is December 31, 2010 [Tr. 66].

mellitus (DM) (treated by insulin pump and hallux limitus[3] (20 C.F.R. 404.1521).  The ALJ

found Plaintiff's medically determinable mental impairment of an adjustment disorder did

not cause more than minimal limitation in Plaintiff's ability to perform basic mental work

activities and was therefore non-severe [Tr. 12]. At Step 3, the ALJ found that during the

period in question, Plaintiff did not have an impairment or combination of impairments

which met the criteria of any of the listed impairments described  in 20 C.F.R. Part 404,

Subpart P, Appendix 1 (20 C.F.R. 404.1525 and 404.1526).   At Step 4, the ALJ determined

Plaintiff had the residual functional capacity to perform the full range of light work as

defined in 20 C.F.R. 404.1567(b). At Step 5, the ALJ found the testimony of the impartial

vocational expert[4] to be credible and that Plaintiff has the residual functional capacity (RFC)

to perform a full range of light work.  The ALJ determined Plaintiff is capable of performing

her past relevant work as an insurance agent and/or receptionist (20 C.F.R. 404.1565) [Tr.

16].  Accordingly, the ALJ found the Plaintiff not disabled at step five of the sequential

evaluation.

The scope of this Court's review is limited to determining whether the ALJ applied

the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and

whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S.

389, 390 (1971).  The Commissioner's findings of  fact are conclusive if supported by

---

[3]     Hallus Limitus involves the first metatarso-phalangeal joint ...at the base of the big toe.  It "causes pain and stiffness in the big toe...it become increasingly harder to bend the toe...a progressive condition...the problem advances...until it becomes rigid or frozen...pain increases...when the big toe is extended or pushed up".  Pain occurs upon walking.  Taber's Cyclopedic Medical Dictionary, Ed. 20, F.A. Davis. 2001

[4]     Ms. Joyce Ryan testified at the request of the ALJ concerning vocational issues (T.357). Claimant objected to the assignment of Ms. Ryan (T.22). The objections were overruled by the ALJ.

substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Walden v. Schweiker*, 672 F.2d 835, 838-9 (11th Cir. 1982).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.     REVIEW OF FACTS

The Plaintiff was born on September 20, 1977, and was thirty-two (32) years old at the time of the Administrative Hearing. [Tr. 434]. Plaintiff testified that she dropped out of school in the 9th grade. Plaintiff took a high school equivalency test and received her GED [Tr. 388]. Plaintiff testified she was an insurance (auto only) agent but her license is no longer active [Tr. 389]. Plaintiff then testified that she hadn't taken the courses to be an insurance agent [Tr. 392]. Plaintiff further testified she had been a substitute teacher, but did not have an Associate's Degree or a Bachelor's Degree. Plaintiff finally testified that she probably was just a part-time classroom aide and the job lasted approximately 6 months.

Plaintiff testified that she last worked as a nurse's aide for 4 months in September of 2008 through her hearing date.  Plaintiff was working on an "on-call" basis.  Plaintiff testified that she only has 2 clients and is employed by an agency.   Plaintiff works with one client on Tuesday and Saturday for 1 hour per day and for the other client a total of 13 hours per week; 3 hours on Monday, Wednesday and Friday and 2 hours on Tuesday and Thursday.  Plaintiff stated the agency sets the hours.  Plaintiff's duties include cleaning the toilet and bed area, retrieving mail and sometimes doing the shopping.  Plaintiff testified she earns about $9.60 per hour.  Plaintiff also testified that she is unable to work more hours due to her impairments. [Tr. 13]

Plaintiff also states she has panic attacks and feelings of being overwhelmed. Plaintiff alleges foot and back pain; an unstable knee and the inability to use her right hand. Plaintiff has migraine headaches not relieved by medications.  Plaintiff advised that she had out-patient foot surgery involving the shortening of one toe [Tr. 13].  After the surgery she wore a brace and had to stay off the foot for a while (T.380).

Plaintiff claims that on March 3rd  and 7th of 2005, the notations of "anxiety" from Coastal Internal Medicine Specialist support her claim of a severe mental impairment (Tr. 212-16). (However, it must be noted that these particular records were made three months before Plaintiff allegedly became disabled).  While these notes do show anxiety, the physician who made them does not appear to have placed any work related functional limitations on Plaintiff because of her anxiety (Tr. 212-16). A note dated March 7th indicated that Plaintiff's anxiety and depression was "STATUS, improved" (Tr. 212).

The ALJ discussed the reports from Coastal Internal Medicine Specialist in July 2005 indicating notations of migraines and depression, and Plaintiff claims these notes support her allegations of a mental impairment (Tr. 14, 256-58). Plaintiff told the doctor she felt "[u]nwanted and unable to access the medical system (Tr. 258)". However, another reason for Plaintiff's visit seems to have been that "[s]he "wanted forms completed for SS disability" (Tr. 258). While the office notes indicated Plaintiff's depression was "worsening," the ALJ correctly noted that they also indicated she was non-compliant with her medication and that she had "not been on any meds for months" (Tr. 14, 259). There is also no indication that the medical sources at Coastal Internal Medicine Specialist referred Plaintiff to a mental health specialist for treatment of a mental impairment (Tr. 212-16, 256-61).

Plaintiff also claims that the handwritten notes and check marks (barely legible) on pre-printed forms completed by Dr. A. Pietri on February 27, 2006 further substantiate her claim of a severe mental impairment (Tr. 171-74, 186).  Dr. Pietri does not appear to have referred Plaintiff for mental health care, and she apparently reported no other mental health concerns to Dr. Pietri until two years later, when she indicated she was worried and depressed (Tr. 173-74). This two-year gap in reports of mental health issues does not meet the Commissioner's duration requirement, which requires that an impairment last for twelve continuous months. 20 C.F.R. § 404.1509.

The ALJ noted a diagnosis of major depressive disorder and a generalized anxiety disorder by Howard Kalter, Ph.D. in October 2006 (Tr. 11, 193-97). Plaintiff states that Dr. Kalter diagnosed her major depression as "recurrent and moderate" (Tr. 197).  However, Plaintiff admitted "she turned to alcohol and cocaine at an early age," and had a significant

history of cocaine and alcohol abuse (Tr. 196-97). Further, Plaintiff had no history of in-patient hospitalization, out-patient evaluation, or rehabilitation services for her emotional and substance abuse problems (Tr. 195, 197). Dr. Kalter diagnosed Plaintiff with alcohol dependence in sustained partial remission (Tr. 197). Dr. Kalter indicated Plaintiff was alert, oriented, and cooperative; her expressive language was within normal limits; and her thought processes were logical and coherent (Tr. 11, 197).

State agency psychologist Dr. Martha Putney, first reviewed the record in March 2006, and concluded there was insufficient evidence to determine whether Plaintiff's mental impairment was severe (Tr. 11, 153). Later, Dr. Puteny reviewed the available record, which then included Dr. Kalter's October 2006 report and evaluation, and concluded that Plaintiff's mental impairments were not severe, i.e., and they caused no more than mild limitations (Tr. 11, 138-51).

## III.  SPECIFIC ISSUES AND CONCLUSIONS OF LAW:

### A.     DID THE ALJ DID PROPERLY CONSIDER PLAINTIFF'S SEVERE IMPAIRMENTS OF DIABETES I AND HALLUX LIMITUS LIMITED

Plaintiff argues the ALJ erred in presenting an October 2006, state agency physician's opinion to the "VE" as representative of Plaintiff's "RFC", because the state agency physician did not consider Plaintiff's hallux limitus condition (Tr. 130-37, 428-29). This condition seems to have been first diagnosed in June 2007 (Tr. 15, 327). Plaintiff argues that no weight should be given the state agency opinion, but failed to explain why the state agency opinion would not be a valid representation of her "RFC" for the period before she was diagnosed with hallux limitus.

Plaintiff alleged she became disabled in June 2005 (Tr. 52), but there seems to be no diagnosis of hallux limitus until two years after that date (Tr. 327). Even if Plaintiff's hallux limitus impairment created limitations beyond those that the state agency physician and ALJ determined, there is no reason to create additional functional limitations before the date Plaintiff was diagnosed with the condition. Further, after Plaintiff was diagnosed with the condition, it does not seem to prevent her from performing light work. Plaintiff argues that her own physician would have disagreed with the determination by the state agency physician and the ALJ that she could perform light work.  However, the physician who diagnosed the hallux limitus never indicated Plaintiff would have work related functional limitations, was disabled, or was unable to perform light work (Tr. 327). The physician simply "[r]ecommend[ed] appropriate foot wear" after Plaintiff told him that wearing high heels and going barefoot made her feet hurt (Tr. 15, 327).  Plaintiff was free to obtain an opinion regarding her capacity for work activity from one of her own treating or examining physicians, but through her attorney she admitted at the hearing that she did not submit such evidence to the ALJ (Tr. 428). The ALJ found Plaintiff's hallux limitus was a severe impairment, but the existing record evidence does not support greater limitations than the ALJ determined (Tr. 11, 15). Since Plaintiff did not show she had greater functional limitations than the ALJ determined, her argument that she could not perform light work is rejected.

Next, Plaintiff argues that the "RFC" was defective because it failed to account for her need to check her blood sugar level and administer insulin multiple times per day. Plaintiff claims this would result in excessive breaks and would not be acceptable in a

competitive work place.  However, Plaintiff admitted that she had failed to provide any documentation  from one of her own treating or examining sources that it would cause a problem in the work place (Tr. 428). While she is not required to produce such evidence, the existing evidence simply does not corroborate Plaintiff's claims that: (1) she had to perform these tasks (check sugar level and administer insulin) as many times as she claims; or that (2) even if she did, she could not perform them within the time allotted for breaks by an employer. Indeed, Plaintiff has pointed to no opinion from any physician who indicated her impairments would require her to take breaks outside what an employer typically allows. Again, at the time of  her hearing, Plaintiff admitted she was working on an "on call" basis because she "had to put food in the house" (Tr. 361-62). Plaintiff's arguments on this point have no merit.

Next, Plaintiff argues the ALJ did not consider all of the non-medical evidence in formulating her "RFC". After her hearing, Plaintiff submitted two "Supervisor Work Form[s]" completed by patient/employers that Plaintiff sat with in her job as a home attendant companion (Tr. 17-21, 425). Both of Plaintiff's patient/employers checked off boxes on preprinted forms indicating Plaintiff would be absent from work four to five days a month (Tr. 19, 21). Plaintiff argues "[c]ourts have held this [amount of absences] would be unacceptable."  While it is true the ALJ did not discuss the lay opinions, there is no rigid requirement that the ALJ discuss every piece of evidence in the decision. All that is required for a meaningful review is that this Court be able to determine the legal principles the ALJ applied.

The ALJ properly discounted Plaintiff's subjective allegations of pain and other symptoms, and found Plaintiff was not disabled (Tr. 14, 16). When the ALJ properly discredits a Plaintiff's subjective allegations and then finds that Plaintiff is not disabled, the ALJ by implication also discounts the testimony of other witnesses. *Allen v. Schweiker*, 642 F.2d 799, 801 (11th Cir. 1981). The ALJ found the evidence from Plaintiff's employers was not credible because he found that Plaintiff was not disabled (Tr. 16). *Allen*, 642 F.2d at 801.

**B.      THE ALJ ERRED IN NOT FINDING PLAINTIFF'S MENTAL IMPAIRMENT AND MIGRAINES NOT SEVERE.**

Plaintiff argues the ALJ should have credited her testimony that she had two or three anxiety attacks per day (Tr. 406).  The ALJ discussed the medical evidence, which did not corroborate Plaintiff's claim that she was experiencing two or three anxiety attacks per day (Tr. 14-15).  While Plaintiff's brief discusses sporadic mental diagnoses since 2003, she failed to identify any portions of the medical evidence which substantiated her claims of two to three panic attacks per day.  Further, at her hearing Plaintiff admitted that she was working at least two days per week as a home healthcare companion (Tr. 15, 361, 425). The medical record, combined with Plaintiff's work activity, shows Plaintiff was not as functionally limited as she claimed. The ALJ gave good reasons to discount Plaintiff's allegations of disabling symptoms.

Further, Plaintiff never established that her mental impairment was severe under the regulations. The ALJ properly concluded that the evidence pertaining to Plaintiff's mental impairment indicated it did not meet the requisite criteria of a severe impairment (Tr. 11-12, 14). *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)

Plaintiff further contends disability due to her migraine headaches.  Plaintiff told her doctor she had migraines from neck pain (Tr. 214). However, the ALJ noted that Plaintiff's cervical X-rays were normal (Tr. 14, 230). While Plaintiff did report migraines to Dr. Pietri on February 27, 2006 (Tr. 171), she apparently had no such complaints a month earlier (Tr. 173). The January and February 2006 visits were Plaintiff's first visits to Dr. Pietri in almost two years (Tr. 171, 173). Plaintiff alleged a history of migraines during her August 2006 consultative examination, stating that "[n]one of the medication seems to help her headaches" (Tr. 199). However, the ALJ noted that Plaintiff went "for months" at a time without taking medications prescribed or given to her (Tr. 14, 258). Plaintiff did not discuss any medical records between February and August 2006 that would demonstrate she experienced migraine headaches in the intervening months. 20 C.F.R. § 404.1509 (an impairment must last or be expected to last twelve continuous months).

Plaintiff next reported migraines in visits to her doctor in December 2006 and January 2007 (Tr. 295, 297). Plaintiff had a hearing on January 21, 2009 (Tr. 355), and the ALJ issued the decision on February 19, 2009 (Tr. 16). Plaintiff did not discuss or identify any medical records after January 2007 evidencing a migraine headache disorder, and the Commissioner found no such evidence (Tr. 1-434). Further, Plaintiff testified she was working at the time of her hearing, stating she had "to put food in the house" (Tr. 15, 361). In sum, Plaintiff did not show that she experienced migraine headaches in a frequency that would significantly limit her ability to perform work related functions. 20 C.F.R. § 404. 1521(a) (an impairment is not severe if it does not significantly limit your physical or mental ability to do basic work activities).  Further, the ALJ specifically asked the vocational expert

("VE") at the hearing to consider a hypothetical question based on the assessment from the

state agency physician, Thomas Renney.  Although Dr. Renney mentioned Plaintiff's

migraines as a factor, in his conclusion he found Plaintiff was capable of light work (Tr.

130- 37, 428-29).

In analyzing Plaintiff's anxiety attacks, possible mental impairment and migraine

headaches,  the ALJ correctly concluded that Plaintiff had no limitation in activities of daily

living; mild limitations in social functioning; mild limitations in concentration, persistence

or pace; and no episodes of decompensation for extended durations (Tr. 12). 20 C.F.R. §

404.1520a(d). This finding is supported by substantial evidence and the record.

### C.   THE ALJ CONSIDERED PLAINTIFF'S WORK ACTIVITY AND HER ALLEGATIONS OF PAIN AND OTHER SYMPTOMS

At her hearing, Plaintiff testified she was then working part-time on an "on call"

basis as a home attendant companion and had last worked full-time hours in November 2008

(Tr. 13, 363, 394, 425). Plaintiff testified she had to work "to put food in the house" (Tr.

361). The ALJ discounted Plaintiff's subjective complaints of disability in part, because of

her work activity (Tr. 13, 15).

Plaintiff argues the ALJ should not have considered her work activity because it was

not substantial gainful activity ("SGA"). However, the ALJ never concluded Plaintiff's work

was "SGA" (Tr. 9-16). Moreover, the regulations note that "work . . . you have done during

any period in which you believe you are disabled may show that you are able to work at the

substantial gainful activity level." 20 C.F.R. § 404.1571. "Even if work you have done was

not substantial gainful activity, it may show that you are able to do more work than you

actually did." Additionally, the regulations pertaining to evaluating pain allows the ALJ to consider a number of factors, including a Plaintiff's daily activities. 20 C.F.R. § 404.1529 (c)(3)(i); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (ALJ may consider daily activities during the fourth step of the sequential process). Since Plaintiff was "on call" and working part-time during the week, the ALJ properly considered her ability to work as a daily activity, inconsistent with alleged disability (Tr. 13, 15).

Plaintiff's work activity was not the only factor the ALJ used to discount Plaintiff's subjective complaint testimony. The ALJ also discussed medical evidence which indicated mostly normal objective tests results and the fact that Plaintiff would go months without taking any medication (Tr. 14-15, 119, 198-203). As discussed above, there were also gaps in Plaintiff's treatment. The ALJ is permitted to consider both a Plaintiff's medical treatment, and any medications a Plaintiff takes as factors in making the credibility determination. 20 C.F.R. §§ 404.1529(c) (3)(iv), 404.1529(c )(3)(v); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1983). The ALJ indicated that Plaintiff's relatively benign medical history "combined with the fact that the claimant is currently working strongly suggests that she is not as functionally limited as she has alleged" (Tr. 15). The ALJ could only accept Plaintiff's complaints of disabling pain and other symptoms to the extent that they could reasonably be accepted as consistent with the medical and other evidence. 20 C.F.R. § 404.1529(a). The ALJ gave good reasons to discount Plaintiff's allegations of disabling pain and other symptoms (Tr. 13-15), thus Plaintiff's arguments have no merit. *Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989).

### D.   THE ALJ DETERMINED PLAINTIFF CAN RETURN TO HER PAST RELEVANT WORK

Plaintiff makes several arguments regarding the ALJ's finding that she can perform her past relevant work. First, Plaintiff claims that the job descriptions in the Department of Labor's Dictionary of Occupational Titles (4th ed. 1991) (DOT) not fit her past relevant work.  Plaintiff indicated she would set this argument aside to address other purported problems with the decision.  However, the Commissioner was not able to discern other portions of the brief in which Plaintiff developed an argument on this point[5].

Plaintiff also claims she worked as an insurance agent for six months. Plaintiff argues that the "DOT" classifies this job as an "SVP 6" and extrapolates that this would require one to two years of experience. Plaintiff also argues that she only completed the eighth grade, and therefore lacked the capacity to perform a job as an insurance agent. Plaintiff further contends that the time requirements needed to learn the job, per the "DOT", and her lack of education necessarily lead to the conclusion that she could not have worked as an insurance agent.

 Plaintiff's "time at work argument" does not appear to be factually accurate. In paperwork Plaintiff completed with her application, she indicated she worked for the insurance company from 1993 through 2005 (Tr. 83, 124). At her hearing, Plaintiff testified that the secretarial portion of her employment for the insurance agency "was towards the ending when I was quitting" (Tr. 414). Thus, Plaintiff's paperwork and testimony support the

---

[5]     Cursory statements of issues do not raise an issue sufficiently for discussion, and Plaintiff has therefore waived or abandoned this argument. *Doe v. Moore*, 410 1337, 1349 n. 10 (11th Cir. 2005) (cursory statements of issues does not constitute an argument, and plaintiff is therefore deemed to have abandoned the argument).

finding that Plaintiff worked as an insurance agent for more than six months as she now argues. Nevertheless, Plaintiff's argument that she did not have the capacity to work as an insurance agent because her job lasted six months and because she only had an eighth grade education is immaterial. Past work is "relevant" if was performed in the past 15 years, was substantial gainful activity, and was performed long enough for plaintiff to learn to do the job. 20 C.F.R. § 404.1565(a). Plaintiff indicated she worked for the insurance company from 1993 through 2005, and her earnings record shows that she earned over $12,000 in 2001, $23,000 in 2002, and over $22,000 in 2003 (Tr. 83, 124, 49-50). The substantial gainful activity (SGA) pay tables indicate that the amounts Plaintiff earned would ordinarily be sufficient to show that the work was "SGA". 20 C.F.R. § 404.1574(b)(2)(B). Plaintiff's argument that she did not have the capacity to perform the insurance agent job is not compatible with her earnings record and therefore without any merit.

The ALJ further determined that Plaintiff could either return to her past work as an insurance agent, or that she could return to her work as a receptionist (Tr. 16, 413). The ALJ based this finding on the "VE's" testimony that Plaintiff could perform all of her past relevant work given her "RFC" (Tr. 429). Therefore, Plaintiff's focus on alleged factual errors in one of her past jobs, even if true, does not affect the outcome of this case.

Next, Plaintiff argues that Florida licensing requirements for insurance agents require a 25-hour course and that it is unclear what type of license Plaintiff received.  In this case, It is immaterial what type of license Plaintiff had or whether she had a license at all. Plaintiff's earnings record clearly shows that Plaintiff's work was "SGA" while she was employed with the insurance agency (Tr. 49-50). Even if Plaintiff was selling insurance with/without a

license, her earnings in such an endeavor would be considered "SGA". 20 C.F.R. 404.1571 ("SGA" is work performed without regard to legality); *Bell v. Sullivan*, 817 F. Supp. 719, 722 (N.D. Ill. 1993).

Finally, Plaintiff argues that her description of receptionist at the insurance company is different from the description of the job in the "DOT", but she failed to provide copies of the "DOT" job description nor did she provide a citation for the same.

The "VE" described Plaintiff's past relevant work as an insurance agent and provided a "DOT" number for that job (Tr. 416). The "VE" also noted that the "DOT" listed the insurance agent job as a light job, but that Plaintiff had performed the job in an office setting (Tr. 416). Thus the "VE" gave an explanation for any conflict in her testimony and the "DOT". In sum, the ALJ's finding that Plaintiff could perform her past jobs as an insurance agent and a receptionist is supported by substantial evidence.

## IV.    CONCLUSION

For the foregoing reasons, the ALJ's decision is inconsistent with the requirements of law and supported by substantial evidence.  Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C.§405(g).

The Office of the Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE and ORDERED** in Chambers at Ft. Myers, Florida, this   8th   day of March,  2011.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

-16-

Copies furnished to:
All Counsel of Record